JAMARIOS L. CANTON
1771951 Robertson Unit
12071 FM 3522
Abilene, Texas  79601-8799

DATE: 04-23-15
FILE IN WRIT FILE
BY: LAR

April 17, 2015

Honorable Abel Acosta, Clerk
Court of Criminal Appeals
P.O. Box 12308 -- Capitol Station
Austin, Texas  78711-2308

RE:  EX PARTE JAMARIOS LECHRISTOPHER CANTON
     Court of Criminal Appeals No. WR-81,430-02
     Trial Court Case No. F-1017409

Dear Mr. Acosta:

Enclosed you will find the original and one carbon copy of my NOTICE TO THE COURT that I ask be promptly presented to the Court for its review and consideration.

Be advised that I have forwarded a carbon copy of same to the Honorable Campbell Cox, District Judge, to his Chambers at the Nacogdoches County Courthouse, under cover of a carbon copy of this letter.

I thank you so very much, in advance, for your kind and generous assistance with this matter.

Very respectfully, I remain,
Your obedient servant,

JAMARIOS L. CANTON, pro se

JLC/grs

cc: Hon. Campbell Cox, II
    Mr. Gordon R. Simmonds
    Case Files - 11.07
              PDR

RECEIVED IN
COURT OF CRIMINAL APPEALS
APR 22 2015
Abel Acosta, Clerk

NO. WR-81,430-02

EX PARTE JAMARIOS LECHRISTOPHER CANTON, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. F1017409 IN THE 145TH DISTRICT COURT
## FROM NACOGDOCHES COUNTY

### APPLICANT'S NOTICE TO THE COURT

TO THE MOST HONORABLE MEMBERS OF THE COURT:

The Court's Order filed January 14, 2015, notes that the Program Supervisor of the TDCJ's Mail System Coordinators Panel provided the Court with an affidavit attesting that the Applicant, Jamarios Canton ("Canton"), had mailed a legal item from the Robertson Unit on January 17, 2013. The Court determined that further information was required for resolving the issue of whether Canton had timely filed his Petition for Discretionary Review ("PDR"). The problems with determining the date on which Canton's PDR had been placed into the internal Legal Mail System of the Robertson Unit, is that Canton had not personally mailed his PDR; rather, it was mailed by his prochein ami who has been assisting Canton throughout his postconviction proceedings.

On October 17, 2014, Canton submitted to this Court his MOTION REQUESTING LEAVE OF COURT TO FILE A PETITION FOR A WRIT OF MANDAMUS, and his PETITION FOR A WRIT OF MANDAMUS. His petition sought to have the Court order Abel Acosta, the Court's Clerk, to file Canton's PDR that had been timely mailed under the Prison Mailbox Rule. Canton explains in his petition that due to extraordinary and exigent circumstances, the inmate-paralegal assisting him with his postconviction proceedings, Gordon R. Simmonds, had been in a situation where he had

-1-

to mail Canton's PDR out in an envelope that bore Simmonds' name in the return address field of the envelope containing the PDR; thus, it is Simmonds' name that was entered in the prison's Legal Mail Log on the date that Canton's PDR was mailed to the Court of Criminal Appeals, and not Canton's. Accordingly the Court's request for prison officials to check the mail logs for "legal or special mail sent by Applicant during the period from January 1, 2013, until April 5, 2013,...." will not bear any fruit.

Canton has included exhibits with his Petition for a Writ of Mandamus he has filed in this Court, which will aid the Court in determining whether Canton had timely filed his PDR, and these are:

EXHIBIT A: OPINION OF THE COURT OF APPEALS ON AFFIRMING THE SENTENCE AND CONVICTION IN THE DIRECT APPEAL UNDERLYING THIS PETITION.

EXHIBIT B: OFFICIAL NOTICE FROM THE COURT OF CRIMINAL APPEALS GRANTING RELATOR AN EXTENSION OF TIME FOR FILING HIS PETITION.

EXHIBIT C: VERIFIED COPY OF PAGE FROM THE MAIL LOG BELONGING TO SIMMONDS (PETITIONER'S AGENT) SHOWING ALL ITEMS MAILED BY SIMMONDS FROM MARCH 17th TO THE 22nd, 2013.

EXHIBIT E. DECLARATION OF GORDON R. SIMMONDS ATTESTING TO THE EVENTS AND CIRCUMSTANCES REQUIRING HIM TO MAIL CANTON'S PDR AS IF IT WERE HIS MAIL.

To recap and restate: Canton's PETITION FOR A WRIT OF MANDAMUS was mailed this Honorable Court of October 17, 2014, so it was filed by the Clerk sometime before October 31, 2014. Canton has been unable to locate the postcard from the Court notifying him that it had been received and filed. He also served a copy of the petition on Sian Schilhab, the Court's General Counsel, and Nicole Lostracco, District Attorney for Nacogdoches County. The petition and its exhibits clearly state the facts and circumstances surrounding the timely mailing of Canton's PDR, and he adopts the PETITION FOR A WRIT OF MANDAMUS, and its EXHIBITS, by reference and inserts them here as if they had been pled, as permitted by Rule 9.7 of the Texas Rules of Appellate Procedure. Alternatively, Canton has attached a copy of the DECLARATION OF GORDON R. SIMMONDS to this NOTICE as an EXHIBIT.

P R A Y E R

-2-

WHEREFORE, PREMISES CONSIDERED, Canton respectfully prays that this Court will consolidate this instant proceeding seeking a writ of habeas corpus, with his original proceeding seeking a writ of mandamus that was filed some time between October 17, 2014 and November 14, 2014, so that the Court can examine and consider the exhibits filed with the petition for a writ of mandamus so that a fair and just determination may be rendered.

Respectfully submitted,

JAMARIOS L. CANTON, Applicant
Robertson Unit, TDCJ No. 1771951
12071 FM 3522
Abilene, Texas   79601-8799

## CERTIFICATE OF SERVICE

I, Jamarios L. Canton, TDCJ-DID No. 1771951, being presently incarcerated at the Robertson Unit of the Correctional Institutions Division of the Texas Department of Criminal Justice, declare under penalty of perjury that the facts and statements contained in this APPLICANT'S NOTICE TO THE COURT, are true and correct; and I further certify that a true and correct carbon copy was served on the following individual by regular U.S. Postal Service first class mail, by depositing same, enclosed in a postpaid and properly addressed envelope, into the prison's internal Legal Mail System under the Prison Mailbox Rule, on this, the SEVENTEENTH day of APRIL, 2015, addressed to:

    Chambers of the Honorable Campbell Cox, II
    145th Judicial District Court
    Nacogdoches County Courthouse, Room 220
    101 West Main Street
    Nacogdoches, Texas   75961

DATED: April 16, 2015

_JAMARIOS L. CANTON

THE STATE OF TEXAS                    §
                                      §         I N M A T E ' S
                                      §       D E C L A R A T I O N
COUNTY OF JONES                       §

## DECLARATION OF GORDON R. SIMMONDS

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

My name is Gordon R. Simmonds, I am over eighteen years of age, of sound mind, capable of making this Declaration, and personally acquainted with the facts herein stated.

I am an inmate confined at the French Robertson Unit of the Correctional Institutions Division, of the Texas Department of Criminal Justice, located in Jones County, Texas, near Abilene. I do hereby certify and declare that I have assisted other inmates as a paralegal since 2001, helping them with researching the law and court cases relevant to their action (criminal and civil); and in preparing and filing papers, petitions, briefs, and motions, in the Federal and State courts.

Jamarios Le Christopher Canton approached me in February of 2013, asking that I explain to him the mechanics and procedures for pursuing postconviction relief. The Twelfth Court of Appeals affirmed Chris' conviction and sentence on December 20, 2012, making his Petition for Discretionary review (PDR) due on or before January 19, 2013. Chris filed a timely request for an extension of time for filing his PDR, and on January 23, 2013, the Court of Criminal Appeals granted his request, allowing him to file his PDR on or before March 22, 2013. I went over the "nuts and bolts" of all the options, procedures, and vehicles available for relief with Chris -- filing his PDR, and then a petition for writ of certiorari in the Supreme Court of the United States, followed by a state application for a writ of habeas corpus; another petition to the Supreme Court of the United States; then the AEDPA, tolling (statutory and equitable), and of filing a federal petition under 28 U.S.C. Section 2254; and all of the proce- dures and hurdles we would face throughout the maze of the federal system. So, Chris asked that I assist him with his litigation -- and I agreed to act as his agent.

Chris' PDR was completed and deposited into the Robertson Unit's Legal Mail System, via the facility's Access to Courts Program operated by the Unit's Law Library staff, on the TWENTY-SECOND (22nd) day of MARCH, 2013, under the Prison Mailbox Rule established by the Court of Criminal Appeals in its Camp-

-1-                                                              EXHIBIT E

bell v. State decision that holds that an inmate's papers are deemed to be filed at the time they were delivered to prison authorities for mailing to the court, and NOT at the time they were stamped by the clerk of the court. It has been long-established by the courts that an inmate's papers are deemed to be filed on the date that the inmate had declared that he or she had deposited the papers into the prison's internal mail system, regardless of the date that the prison's mailroom log shows that the papers were actually mailed out by the mailroom's staff. See Houston v. Lack, 487 U.S. 266, 274, 108 S.Ct. 2379 (1988); Sonnier v. Johnson, 161 F.3d 941 (5th Cir. 1998); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Richards v. Thaler, No. 11-20803, 2013 WL 809246 (5th Cir. Mar. 5, 2013); Byrd v. Thaler, 2011 U.S. Dist. LEXIS 6480 (N.D. Tex. 2011); Ex parte Sinegar, 324 S.W.3d 578, 581 (Tex. Crim. App. 2010).

Chris and I met in the Law Library during the 2:30 p.m. to 4:30 p.m. session on Friday, March 22, 2013, so that I could have him sign everywhere that he had to sign; and hand his PDR over to him in a writ envelope I had already prepared and addressed so that all he would need to do is affix the proper postage. Altogether, I had prepared three envelopes for mailing: (1) the original for the Court of Criminal Appeals; (2) a carbon copy for the District Attorney of Nacogdoches County; and (3) a carbon copy for the State Prosecuting Attorney. Chris told me, however, that he did not have ANY stamps, and that he had been unable to find anyone who would lend him the stamps he needed. Chris was housed in 8-Building in medium custody, and medium custody inmates are greatly restricted as to how much they are permitted to spend each month at the Commissary. Chris did tell me that he had money in his Inmate Trust Fund Account, which would prevent him from mailing his PDR and copies out as an indigent; and that his building was not scheduled to go to the Commissary until Wednesday, March 27, 2013, which was a date that would be much too late. I told Chris that his PDR **HAD** to be deposited into the prison's mailbox **THAT DAY**, March 22, 2013, before midnight. So I reassured Chris that he did not need to worry because I would take the three envelopes with me and take care of everything for him.

I am indigent, and have been so for quite some time. I have not been to the Commissary in eleven years (give or take). I decided to mail Chris' PDR and carbon copies out in envelopes that contained **MY** name and information in the return address so that I could mail out the three envelopes under **MY** indigent status. When I got back to my cell, I addressed three more writ/catalog envelopes, filled out an INDIGENT POSTAGE REQUEST FORM, put everything in my INDIGENT MAIL

-2-

ENVELOPE and deposited it into the prison mailbox on March 22, 2013, around 5:00 p.m. as I was goind to the Mess Hall for supper.

On Tuesday night, March 26, 2013, when the mail was being delivered to us I was given my INDIGENT MAIL ENVELOPE that I had deposited into the mail on Friday, March 22, 2013. The envelope was not empty, and when I opened it I found to my horror that the contents was everything that I had deposited into the prison mailbox on the preceding Friday. The envelope and its contents had been returned to me, in error, unprocessed. When I went to breakfast Wednesday morning I carried the INDIGENT MAIL ENVELOPE with me and once again deposited it into the prison's mailbox to be picked up by mailroom staff later that morning, March 27, 2013.

I had a Law Library session scheduled for 12:15 p.m. later that Wednesday, March 27, 2013. When I went there, Officers Johnny G. Snyder and Shawn M. Ellison were supervising the session and processing the Indigent Mail. The **FIRST** thing that I wanted to know was whether my three legal mail envelopes (the original PDR and the two carbon copies) had been processed by them yet. My INDIGENT MAIL ENVELOPE was picked up by Mailroom staff and would have to be sent to the Law Library for processing and postage, then, returned to the Mailroom for further processing, logging, and turning over to the Postal Service. I discussed with Officers Snyder and Ellison the problem regarding my Indigent Envelope being returned to me unprocessed. The concensus was that it had not been picked up by Mailroom staff in the first place, and that it had never left my building at all. I told the Officers that it was okay -- that there was no foul -- because all that really mattered was the date on the certificate of service. However, as an after note, it was later learned that there had been several other inmates in my building who had also had their Indigent Envelopes returned unprocessed to them. One of the "New Boot" officers had seen the Indigent Envelopes stacked up on top of the prison mailbox, and the officer, thinking that such was not a good idea, took the envelopes and set them in a shelf behind the Security Desk. The officer left at 6:00 a.m., his shift change, and the shift coming on was not informed that they had to be given to the Mailroom staff who would pick up the mail at 8:00 a.m. Monday morning. The envelopes sat behind the Security Desk until they were discovered during the day on Tuesday, March 26, 2013; then, returned to the inmates whose names were on the Indigent Envelopes that night.

I do hereby certify and declare, that from March 22, 2006, to the present date, I have faithfully and accurately maintained Mail Logs of my own, in which

I entered the dates on which each and every item I have mailed out was deposited into the internal mail system of the TDCJ units to which I was assigned during the period relevant to this Declaration. I further certify and declare that I have maintianed my Mail Logs in the regular course of my assisting other inmates as their paralegal, appointed by them as their agent under the Texas Statutory Power of Attorney Act to act in their behalf. The dates and notes contained in my Mail Logs were entered on or near the date or time indicated, or reasonably soon thereafter, by me, personally. With Chris' PETITION FOR A WRIT OF MANDAMUS he has submitted as his EXHIBIT C, copies of the front and back covers of the "DATEBOOK" I use as my Mail Record Logs, and the "opened book" pages of the relevant dates of March 17th to the 23rd, of 2013, showing the following entry for Friday, March 22, 2013:

PDR       Co.      State
3 LEG FLT - Tex.Cr.App./ADA/Pros.Atty (CANTON)

I certify and declare that the copies made of my Mail Log and attached as Chris' EXHIBIT C are true and correct copies of the originals in my possession and that are available for inspection when ordered by the Court.

TO SUMMARIZE: When I deposited Chris's PDR into the prison's internal Legal Mail System at 5:00 o'clock in the afternoon of March 22, 2013, Mailroom employees had already been by and picked up the mail for that day, a Friday; thus, the Indigent Mail envelopes stacked on top of the mailbox, because of the mailbox being too small for the envelopes to be dropped into the mailbox itself, was not going to be picked up until 8:00 o'clock a.m. Monday, March 25, 2013. Sometime over the weekend, the stack of Indigent Mail Envelopes were removed from atop the mailbox and set on a shelf behind the Security Desk where they sat until being discovered sometime during the day Tuesday, March 26, 2013, and returned that night after 8:00 p.m. to the inmates to whom each envelope belonged, rather than each being sent to the mailroom when first discovered. My Indigent Mail Envelope containing Chris' PDR and the carbon copies was again deposited into the prison's internal mail system in the early morning hours of Wednesday, March 27, 2013, picked up by Mailroom staff, sent to the Law Library for processing to affix the proper postage to each envelope being mailed, and then taken back to the Mailroom by Law Library staff for final processing and logging. The Official Mail Room Legal Mail Log for the Robertson Unit shows that the envelope that contained Jamarios LeChristopher Canton's PDR was "logged" as being "mailed" out on March 28, 2013. The out-going mail was not taken back to the Mailroom by Law

-4-

Library staff until the late-afternoon of Wednesday, March 27, 2013, too late to be processed and logged; thus, it sat there until Mailroom staff processed it on the next day, Thursday, March 28, 2013.

I understand fully that any false statements made in this Declaration may subject me to penalties for perjury. Pursuant to Chapter 132 of the Texas Civil Practice and Remedies Code, I declare under penalty of perjury that the foregoing statements and declarations are true and correct.

EXECUTED on this, the THIRTEENTH day of APEIL, 2015.

Declarant Further Sayeths Naught,

GORDON R. SIMMONDS, Declarant
Robertson Unit, TDCJ No. 932489
12071 FM 3522
Abilene, Texas   79601-8799

-5-

JAMARIOS L. CANTON
1771931 Robertson Unit
12071 FM 3322
Abilene, Texas 79601-8799

April 17, 2015

Honorable Abel Acosta, Clerk
Court of Criminal Appeals
P.O. Box 12308 -- Capitol Station
Austin, Texas 78711-2308

RE:  EX PARTE JAMARIOS LECHRISTOPHER CANTON
     Court of Criminal Appeals No. WR-81,430-02
     Trial Court Case No. F-1017409

Dear Mr. Acosta:

Enclosed you will find the original and one carbon copy of my NOTICE TO THE COURT that I ask be promptly presented to the Court for its review and consideration.

Be advised that I have forwarded a carbon copy of same to the Honorable Campbell Cox, District Judge, to his Chambers at the Nacogdoches County Courthouse, under cover of a carbon copy of this letter.

I thank you so very much, in advance, for your kind and generous assistance with this matter.

                    Very respectfully, I remain,
                       Your obedient servant,

                    JAMARIOS L. CANTON, pro se

JLC/grs

cc: Hon. Campbell Cox, II
    Mr. Gordon R. Simmonds
    Case Files - 11.07
              FOR

# IN THE COURT OF CRIMINAL APPEALS
## O F   T E X A S

### NO. WR-81,430-02

### EX PARTE JANARIOS LECHRISTOPHER CANTON,   Applicant

ON APPLICATION FOR A WRIT OF HABEAS CORPUS
CAUSE NO. F1017409 IN THE 145TH DISTRICT COURT
FROM NACOGDOCHES COUNTY

### APPLICANT'S NOTICE TO THE COURT

TO THE MOST HONORABLE MEMBERS OF THE COURT:

The Court's Order filed January 14, 2015, notes that the Program Supervisor of the TDCJ's Mail System Coordinators Panel provided the Court with an affidavit attesting that the Applicant, Janarios L.Canton ("Canton"), had mailed a legal item from the Robertson Unit on January 17, 2013. The Court determined that further information was required for resolving the issue of whether Canton had timely filed his Petition for Discretionary Review ("PDR"). The problems with determining the date on which Canton's PDR had been placed into the internal legal Mail System of the Robertson Unit, is that Canton had not personally mailed his PDR; rather, it was mailed by his prochein ami who has been assisting Canton throughout his postconviction proceedings.

On October 17, 2014, Canton submitted to this Court his MOTION REQUESTING LEAVE OF COURT TO FILE A PETITION FOR A WRIT OF MANDAMUS, and his PETITION FOR A WRIT OF MANDAMUS. His petition sought to have the Court order Abel Acosta, the Court's Clerk, to file Canton's PDR that had been timely mailed under the Prison Mailbox Rule. Canton explains in his petition that due to extraordinary and exigent circumstances, the inmate-paralegal assisting him with his postconviction proceedings, Gordon R. Simmonds, had been in a situation where he had

-1-

to mail Canton's PDR out in an envelope that bore Simmonds' name in the return address field of the envelope containing the PDR; thus, it is Simmonds' name that was entered in the prison's Legal Mail Log on the date that Canton's PDR was mailed to the Court of Criminal Appeals, and not Canton's. Accordingly the Court's request for prison officials to check the mail logs for "legal or special mail sent by Applicant during the period from January 1, 2013, until April 5, 2013,...." will not bear any fruit.

Canton has included exhibits with his Petition for a Writ of Mandamus he has filed in this Court, which will aid the Court in determining whether Canton had timely filed his PDR, and these are:

EXHIBIT A: OPINION OF THE COURT OF APPEALS ON AFFIRMING THE SENTENCE AND CONVICTION IN THE DIRECT APPEAL UNDERLYING THIS PETITION.

EXHIBIT B: OFFICIAL NOTICE FROM THE COURT OF CRIMINAL APPEALS GRANTING RELATOR AN EXTENSION OF TIME FOR FILING HIS PETITION.

EXHIBIT C: VERIFIED COPY OF PAGE FROM THE MAIL LOG BELONGING TO SIMMONDS (PETITIONER'S AGENT) SHOWING ALL ITEMS MAILED BY SIMMONDS FROM MARCH 17th TO THE 22nd, 2013.

EXHIBIT E. DECLARATION OF GORDON R. SIMMONDS ATTESTING TO THE EVENTS AND CIRCUMSTANCES REQUIRING HIM TO MAIL CANTON'S PDR AS IF IT WERE HIS MAIL.

To recap and restate: Canton's PETITION FOR A WRIT OF MANDAMUS was mailed this Honorable Court of October 17, 2014, so it was filed by the Clerk sometime before October 31, 2014. Canton has been unable to locate the postcard from the Court notifying him that it had been received and filed. He also served a copy of the petition on Sian Schilhab, the Court's General Counsel, and Nicole Lostracco, District Attorney for Nacogdoches County. The petition and its exhibits clearly state the facts and circumstances surrounding the timely mailing of Canton's PDR, and he adopts the PETITION FOR A WRIT OF MANDAMUS, and its EXHIBITS, by reference and inserts them here as if they had been pled, as permitted by Rule 9.7 of the Texas Rules of Appellate Procedure. Alternatively, Canton has attached a copy of the DECLARATION OF GORDON R. SIMMONDS to this NOTICE as an EXHIBIT.

## P R A Y E R

-2-

WHEREFORE, PREMISES CONSIDERED, Canton respectfully prays that this Court will consolidate this instant proceeding seeking a writ of habeas corpus, with his original proceeding seeking a writ of mandamus that was filed some time between October 17, 2014 and November 14, 2014, so that the Court can examine and consider the exhibits filed with the petition for a writ of mandamus so that a fair and just determination may be rendered.

Respectfully submitted,

JAMARIOS L. CANTON, Applicant
Robertson Unit, TDCJ No. 1771951
12071 FM 3522
Abilene, Texas 79601-8799

## CERTIFICATE OF SERVICE

I, Jamarios L. Canton, TDCJ-DID No. 1771951, being presently incarcerated at the Robertson Unit of the Correctional Institutions Division of the Texas Department of Criminal Justice, declare under penalty of perjury that the facts and statements contained in this APPLICANT'S NOTICE TO THE COURT, are true and correct; and I further certify that a true and correct carbon copy was served on the following individual by regular U.S. Postal Service first class mail, by depositing same, enclosed in a postpaid and properly addressed envelope, into the prison's internal Legal Mail System under the Prison Mailbox Rule, on this, the SEVENTEENTH day of APRIL, 2013, addressed to:

Chambers of the Honorable Campbell Cox, II
145th Judicial District Court
Nacogdoches County Courthouse, Room 220
101 West Main Street
Nacogdoches, Texas 75961

DATED: April 16, 2013

JAMARIOS L. CANTON

-3-

THE STATE OF TEXAS §

§     I N M A T E ' S
§     D E C L A R A T I O N

COUNTY OF JONES §

## DECLARATION OF GORDON R. SIMMONDS

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

My name is Gordon R. Simmonds, I am over eighteen years of age, of sound mind, capable of making this Declaration, and personally acquainted with the facts herein stated.

I am an inmate confined at the French Robertson Unit of the Correctional Institutions Division, of the Texas Department of Criminal Justice, located in Jones County, Texas, near Abilene. I do hereby certify and declare that I have assisted other inmates as a paralegal since 2001, helping them with researching the law and court cases relevant to their action (criminal and civil); and in preparing and filing papers, petitions, briefs, and motions, in the Federal and State courts.

Jamarios Le Christopher Canton approached me in February of 2013, asking that I explain to him the mechanics and procedures for pursuing postconviction relief. The Twelfth Court of Appeals affirmed Chris' conviction and sentence on December 20, 2012, making his Petition for Discretionary review (PDR) due on or before January 19, 2013. Chris filed a timely request for an extension of time for filing his PDR, and on January 23, 2013, the Court of Criminal Appeals granted his request, allowing him to file his PDR on or before March 22, 2013. I went over the "nuts and bolts" of all the options, procedures, and vehicles available for relief with Chris -- filing his PDR, and then a petition for writ of certiorari in the Supreme Court of the United States, followed by a state application for a writ of habeas corpus; another petition to the Supreme Court of the United States; then the AEDPA, tolling (statutory and equitable), and of filing a federal petition under 28 U.S.C. Section 2254; and all of the procedures and hurdles we would face throughout the maze of the federal system. So, Chris asked that I assist him with his litigation -- and I agreed to act as his agent.

Chris' PDR was completed and deposited into the Robertson Unit's Legal Mail System, via the facility's Access to Courts Program operated by the Unit's Law Library staff, on the TWENTY-SECOND (22nd) day of MARCH, 2013, under the Prison Mailbox Rule established by the Court of Criminal Appeals in its <u>Camp-</u>

-1-

hell v. State decision that holds that an inmate's papers are deemed to be filed at the time they were delivered to prison authorities for mailing to the court, and NOT at the time they were stamped by the clerk of the court. It has been long-established by the courts that an inmate's papers are deemed to be filed on the date that the inmate had declared that he or she had deposited the papers into the prison's internal mail system, regardless of the date that the prison's mailroom log shows that the papers were actually mailed out by the mailroom's staff. See Houston v. Lack, 487 U.S. 266, 274, 108 S.Ct. 2379 (1988); Sonnier v. Johnson, 161 F.3d 941 (5th Cir. 1998); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Richards v. Thaler, No. 11-20803, 2013 WL 809246 (5th Cir. Mar. 5, 2013); Byrd v. Thaler, 2011 U.S. Dist. LEXIS 6480 (N.D. Tex. 2011); Ex parte Sinegar, 324 S.W.3d 578, 581 (Tex. Crim. App. 2010).

Chris and I met in the Law Library during the 2:30 p.m. to 4:30 p.m. session on Friday, March 22, 2013, so that I could have him sign everywhere that he had to sign; and hand his PDR over to him in a writ envelope I had already prepared and addressed so that all he would need to do is affix the proper postage. Altogether, I had prepared three envelopes for mailing: (1) the original for the Court of Criminal Appeals; (2) a carbon copy for the District Attorney of Nacogdoches County; and (3) a carbon copy for the State Prosecuting Attorney. Chris told me, however, that he did not have ANY stamps, and that he had been unable to find anyone who would lend him the stamps he needed. Chris was housed in 8-Building in medium custody, and medium custody inmates are greatly restricted as to how much they are permitted to spend each month at the Commissary. Chris did tell me that he had money in his Inmate Trust Fund Account, which would prevent him from mailing his PDR and copies out as an indigent; and that his building was not scheduled to go to the Commissary until Wednesday, March 27, 2013, which was a date that would be much too late. I told Chris that his PDR HAD to be deposited into the prison's mailbox THAT DAY, March 22, 2013, before midnight. So I reassured Chris that he did not need to worry because I would take the three envelopes with me and take care of everything for him.

I am indigent, and have been so for quite some time. I have not been to the Commissary in eleven years (give or take). I decided to mail Chris' PDR and carbon copies out in envelopes that contained MY name and information in the return address so that I could mail out the three envelopes under MY indigent status. When I got back to my cell, I addressed three more writ/catalog envelopes, filled out an INDIGENT POSTAGE REQUEST FORM, put everything in my INDIGENT MAIL

ENVELOPE and deposited it into the prison mailbox on March 22, 2013, around 5:00 p.m. as I was going to the Mess Hall for supper.

On Tuesday night, March 26, 2013, when the mail was being delivered to us I was given my INDIGENT MAIL ENVELOPE that I had deposited into the mail on Friday, March 22, 2013. The envelope was not empty, and when I opened it I found to my horror that the contents was everything that I had deposited into the prison mailbox on the preceding Friday. The envelope and its contents had been returned to me, in error, unprocessed. When I went to breakfast Wednesday morning I carried the INDIGENT MAIL ENVELOPE with me and once again deposited it into the prison's mailbox to be picked up by mailroom staff later that morning, March 27, 2013.

I had a Law Library session scheduled for 12:15 p.m. later that Wednesday, March 27, 2013. When I went there, Officers Johnny G. Snyder and Shawn M. Ellison were supervising the session and processing the Indigent Mail. The **FIRST** thing that I wanted to know was whether my three legal mail envelopes (the original PDR and the two carbon copies) had been processed by them yet. My INDIGENT MAIL ENVELOPE was picked up by Mailroom staff and would have to be sent to the Law Library for processing and postage, then, returned to the Mailroom for further processing, logging, and turning over to the Postal Service. I discussed with Officers Snyder and Ellison the problem regarding my Indigent Envelope being returned to me unprocessed. The consensus was that it had not been picked up by Mailroom staff in the first place, and that it had never left my building at all. I told the Officers that it was okay -- that there was no foul -- because all that really mattered was the date on the certificate of service. However, as an after note, it was later learned that there had been several other inmates in my building who had also had their Indigent Envelopes returned unprocessed to them. One of the "New Boot" officers had seen the Indigent Envelopes stacked up on top of the prison mailbox, and the officer, thinking that such was not a good idea, took the envelopes and set them in a shelf behind the Security Desk. The officer left at 6:00 a.m., his shift change, and the shift coming on was not informed that they had to be given to the Mailroom staff who would pick up the mail at 8:00 a.m. Monday morning. The envelopes sat behind the Security Desk until they were discovered during the day on Tuesday, March 26, 2013; then, returned to the inmates whose names were on the Indigent Envelopes that night.

I do hereby certify and declare, that from March 22, 2006, to the present date, I have faithfully and accurately maintained Mail Logs of my own, in which

I entered the dates on which each and every item I have mailed out was deposited into the internal mail system of the TDCJ units to which I was assigned during the period relevant to this Declaration. I further certify and declare that I have maintianed my Mail Logs in the regular course of my assisting other inmates as their paralegal, appointed by them as their agent under the Texas Statutory Power of Attorney Act to act in their behalf. The dates and notes contained in my Mail Logs were entered on or near the date or time indicated, or reasonably soon thereafter, by me, personally. With Chris' PETITION FOR A WRIT OF MANDAMUS he has submitted as his EXHIBIT C, copies of the front and back covers of the "DATEBOOK" I use as my Mail Record Logs, and the "opened book" pages of the relevant dates of March 17th to the 23rd, of 2013, showing the following entry for Friday, March 22, 2013:

PDR      Co.      State
3 LEG FLT - Tex.Cr.App./ADA/Pros.Atty (CANTON)

I certify and declare that the copies made of my Mail Log and attached as Chris' EXHIBIT C are true and correct copies of the originals in my possession and that are available for inspection when ordered by the Court.

TO SUMMARIZE: When I deposited Chris's PDR into the prison's internal Legal Mail System at 5:00 o'clock in the afternoon of March 22, 2013, Mailroom employees had already been by and picked up the mail for that day, a Friday; thus, the Indigent Mail envelopes stacked on top of the mailbox, because of the mailbox being too small for the envelopes to be dropped into the mailbox itself, was not going to be picked up until 8:00 o'clock a.m. Monday, March 25, 2013. Sometime over the weekend, the stack of Indigent Mail Envelopes were removed from atop the mailbox and set on a shelf behind the Security Desk where they sat until being discovered sometime during the day Tuesday, March 26, 2013, and returned that night after 8:00 p.m. to the inmates to whom each envelope belonged, rather than each being sent to the mailroom when first discovered. My Indigent Mail Envelope containing Chris' PDR and the carbon copies was again deposited into the prison's internal mail system in the early morning hours of Wednesday, March 27, 2013, picked up by Mailroom staff, sent to the Law Library for processing to affix the proper postage to each envelope being mailed, and then taken back to the Mailroom by Law Library staff for final processing and logging. The Official Mail Room Legal Mail Log for the Robertson Unit shows that the envelope that contained Jamarios LeChristopher Canton's PDR was "logged" as being "mailed" out on March 28, 2013. The out-going mail was not taken back to the Mailroom by Law

-4-

Library staff until the late-afternoon of Wednesday, March 27, 2013, too late to be processed and logged; thus, it sat there until Mailroom staff processed it on the next day, Thursday, March 28, 2013.

I understand fully that any false statements made in this Declaration may subject me to penalties for perjury. Pursuant to Chapter 132 of the Texas Civil Practice and Remedies Code, I declare under penalty of perjury that the foregoing statements and declarations are true and correct.

EXECUTED on this, the THIRTEENTH day of APRIL, 2015.

Declarant Further Sayeth Naught,

GORDON R. SIMMONDS, Declarant
Robertson Unit, TDCJ No. 932489
12071 FM 3522
Abilene, Texas   79601-8799